People v K.B. (2023 NY Slip Op 51440(U))

[*1]

People v K.B.

2023 NY Slip Op 51440(U)

Decided on September 8, 2023

Supreme Court, Erie County

Wojtaszek, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 8, 2023
Supreme Court, Erie County

The People of the State of New York,

against
K.B., Defendant.

Indictment No. 02188-2016

John J. Flynn, Esq.
Erie County District Attorney
BY: Daniel Mattle, Esq.
Assistant District Attorney
Attorney for the People
Alexandra Harrington, Esq.
Attorney for the Defendant 

Paul B. Wojtaszek, J.

On May 23, 2017 the defendant plead guilty to Manslaughter in the First Degree, Penal Law § 125.20(1) in connection with the November 20, 2016 stabbing of Shaundez Davis that resulted in his death. Mr. Davis was the father of the defendant's daughter. Their daughter was born on XX, XX, 2015, less than one year before his death. The defendant was sentenced to 10 years incarceration with five years of post-release supervision. The defendant now moves pursuant to Criminal Procedure Law (CPL) §440.47, Domestic Violence Survivors Justice Act (hereinafter "DVSJA"), for re-sentencing in accordance with Penal Law §60.12. The court granted defendant's application for permission to so move on March 28, 2022. The defendant filed her affirmation in support on June 17, 2022. The People filed their affidavit in opposition on October 21, 2022 and a hearing was conducted on June 22, 2023 where the only live testimony was that of the defendant herself. Multiple exhibits were also stipulated into evidence by the parties.
BURDEN OF PROOF
The defendant must establish her eligibility for the ameliorative remedy of re-sentencing under the Domestic Violence Survivors Justice Act. That burden is by a preponderance of the evidence (see People v Addimando, 197 AD3d 106 [2nd Dept 2021]). This court must consider the entirety of the evidence before it, including any facts or circumstances relevant to the imposition of a new sentence along with the defendant's institutional record of confinement before it decides whether a re-sentence is warranted.
The court has reviewed the submissions of the defendant and the People, the sentencing minutes, the Pre-Sentence Investigation and report, and the testimony of the defendant. The court has also considered the opening remarks of counsel and their thorough and thoughtful summations at the conclusion of the hearing.

FINDINGS OF FACT AND 
 CONCLUSIONS OF LAW
The defendant seeks the benefit of re-sentencing to a term of five years and no post-release supervision.[FN1]
She explained that her relationship with the victim, Mr. Davis, began when they were both in high-school. It started out in a very innocent and typical way. Unfortunately over time the dynamics of their relationship as boyfriend/girlfriend degraded into a negative and eventually toxic situation that turned abusive. As Mr. Davis became more and more jealous of the defendant, he began to verbally and physically assault her. It started with him calling her names such as "whore," and progressed into constant "pinching" that sometimes left marks on her body as a way of silencing her when they were around other people. The defendant became pregnant with their daughter, and then one month before the baby was born they broke up because the defendant could no longer take the verbal and physical abuse.
However, once she had the baby the situation got worse as Mr. Davis became jealous of the baby and all of the attention being diverted further away from him. Incidents of verbal and physical abuse continued, most notably when Mr. Davis punched the defendant in the stomach causing a possible miscarriage.
There was a separate incident at the high-school where the two had another physical altercation, but it was the defendant who was punished. She recalled a coach at the school not believing her version of the incident, so from that point on she made the decision to keep all of the ongoing incidents and issues to herself, including never going to the police for fear she would not be believed or otherwise make the victim look like a "bad guy."
In November 2016 there was another incident where Mr. Davis followed the defendant home and grabbed her violently by the neck. She was able to break free and run to her apartment, but Mr. Davis proceeded to bang loudly on her door. She was eventually secure in her apartment alone with her daughter, but she placed a kitchen knife under her couch because she was scared and did not know what to do. The banging eventually stopped.
Finally, just one week later on November 20, 2016, Mr. Davis was invited to the defendant's apartment for a meeting to try and "make it work" for their daughter. Mr. Davis's brother was supposed to join them as a buffer of sorts, but he did not attend. After Mr. Davis [*2]arrived he proceeded to make unwanted physical/sexual advances toward the defendant that resulted in yet another physical altercation. The defendant was thrown around by her hair (she wore long braids) and knocked to the ground multiple times. Mr. Davis kicked their baby during the course of this fight. On one of the occasions when she was knocked to the ground her hand came across the knife that she had left under the couch a week earlier. She grabbed the knife and brandished it in an effort to get Mr. Davis to leave. She was able to chase him out of the apartment, swinging the knife at him.
She testified she had no intention to kill the victim, she just wanted him to leave and she did not even realize he was injured during the incident. Notably the defendant's roommate Taylor witnessed most of this fight, but Taylor did not cooperate and come to court to testify at this hearing. The defendant testified she never meant to harm Mr. Davis, but she nonetheless expressed great remorse and admitted her guilt by way of plea. She accepted her sentence without appeal.
The defendant's institutional record is very positive overall, but for a few minor infractions. She seems committed to setting goals, accomplishing tasks, and making the environment she has been living in a better place. In conclusion the defendant described that a warm and loving support system is waiting for her at home, anchored by a very close relationship with her mother and above all else she desires to return to living with and caring for her daughter.
The legislative intent or spirit of the statute is helpful in this case:
"The legislative history and the Domestic Violence Survivors Justice Act reflect the Legislature's concern to address "the unjust ways in which the criminal justice system responds to and punishes domestic violence survivors who act to protect themselves from an abuser's violence." The Committee Report notes that "all too often, when a survivor defends herself and her children, our criminal justice system responds with harsh punishment instead of with compassion and assistance. Much of this punishment is a result of our state's current sentencing structure which does not allow judges discretion to fully consider the impact of domestic violence when determining sentence lengths. This leads to long, unfair prison sentences for many survivors" (2019 NY Assembly Bill 3974).
Penal Law § 60.12 reads in relevant part as follows:
" the court, upon a determination following a hearing that (a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant as such term is defined in subdivision one of section 530.11 of the criminal procedure law; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, that a sentence of imprisonment pursuant to section 70.00, 70.02, 70.06 or subdivision two or three of section 70.71 of this title would be unduly harsh may instead impose a sentence in accordance with this section" (Penal Law § 60.12).
The DVSJA permits courts to impose reduced alternative, less severe, sentences in [*3]certain cases involving defendants who are victims of domestic violence and while the effective date of the statute is still relatively new, many trial courts statewide have granted similar prayers for relief when appropriate (see People v Burns, 207 AD3d 646 [2nd Dept 2022]; People v Addimando, supra) (see also People v T.P., 216 AD3d 1469, 1471 [4th Dept 2023]) (holding a reduction in the defendant's sentence pursuant to the DVSJA is warranted where a preponderance of the evidence supports all the required factors and it would be unduly harsh to apply the normal sentencing guidelines).
The defendant in this case has met her burden of convincing this court that she established her entitlement to the ameliorative relief of the DVSJA. The domestic violence contemplated by the Legislature in passing this statute is cumulative and not transactional (see People v Smith, 69 Misc 3d 1030 [Erie County Ct, 2020]), and this court must focus on the unique facts and circumstances surrounding the defendant's commission of the instant crime to determine if it is sufficiently related to the alleged domestic violence she suffered to warrant the drastic remedy she seeks. 
After careful consideration and due deliberation, this court is persuaded that the defendant was a "victim" as contemplated by the statute of domestic violence and she was subjected to substantial physical, sexual or psychological abuse which was a significant factor in the commission of the offense. Moreover, her sentence was unduly harsh or severe.
The verbal, psychological, and physical abuse the defendant suffered was sufficiently corroborated by the Pre-Sentence Investigation Report, defendant's statements to the police, and affidavits from people with personal knowledge of the history between the defendant and Mr. Davis including that of an unbiased school administrator (see People v Coles, 202 AD3d 706, 707 [2nd Dept 2022]).
This court is aware of the discrepancy in the defendant's statements with respect to how and where the stabbing took place (inside the apartment versus outside). This court has considered the possible inconsistency along with the defendant's testimony explaining same, but this is insufficient to deny the relief.
The First Department's ruling in People v Williams (198 AD3d 466 [1st Dept 2021]), requires a timing element, but the defendant here more than satisfied her burden of showing a temporal nexus between the abuse and the offense, so much so that the abuse was happening contemporaneously with the struggle that resulted in the stabbing. As such, any argument that a temporal nexus was not established is not compelling.
Considering the "full picture" analysis detailed in (People v Smith, supra and People v S.M., 2021 NYLJ Lexis 829 [Erie County Ct 2021]), the defendant has met her burden.
Accordingly, for the foregoing reasons, it is hereby,
ORDERED, that the defendant should be resentenced in accordance with Penal Law §60.12; and it is further
ORDERED, that upon sentencing, a determinate sentence of five years imprisonment plus a period of 2 ½ years of post-release supervision would be imposed on defendant's conviction of Manslaughter in the First Degree, Penal Law § 125.20(1); and it is further
ORDERED, that in calculating the new term to be served by the applicant pursuant to PL §60.12, the defendant should receive credit for all jail time credited towards the subject conviction, all periods of incarceration credited toward the sentence originally imposed, and all time served on post-release supervision, and it is further
ORDERED, that the defendant has ten days from the date of the within decision and [*4]order to inform the court whether she wishes to withdraw her application or appeal said decision and order; and it is further
ORDERED, that unless defendant so advises the court within said ten-day period, the matter will be set down for sentencing on September 20, 2023 at 2:00 p.m., at which time the court will vacate the sentence originally imposed and impose a determinate sentence of five years imprisonment plus a period of 2 ½ years of post-release supervision would be imposed on defendant's conviction of Manslaughter in the First Degree, Penal Law § 125.20(1); and it is further
ORDERED, that defendant shall appear with counsel on September 20, 2023 at 2:00 p.m., for the purpose of resentencing.
This decision shall constitute the order in this matter for appeal purposes and no other or further order shall be required. Pursuant to CPL §440.47 (3) "an appeal may be taken as of right in accordance with applicable provisions of this chapter: (a) from an order denying resentencing; (b) or from a new sentence imposed under this provision and may be based on the grounds that (i) the term of the new sentence is harsh or excessive; or (ii) that the term of the new sentence is unauthorized as a matter of law. An appeal in accordance with the applicable provisions of this chapter may also be taken as of right by the appellant from an order specifying and informing such applicant of the term of the determinate sentence the court would impose on resentencing on the ground that the term of the proposed sentence is harsh or excessive; upon remand to the sentencing court following such appeal the applicant shall be given an opportunity to withdraw an application for resentencing before any resentence is imposed. The applicant may request that the court assign him or her an attorney for the preparation of and proceedings on any appeals regarding his or her application for resentencing pursuant to this section. The attorney shall be assigned in accordance with the provisions of subdivision one of section seven hundred seventeen and subdivision four of section seven hundred twenty-two of the county law and related provisions of article eighteen-A of such law.
DATED: Buffalo, New York
September 8, 2023
HON. PAUL B. WOJTASZEK
Supreme Court Justice

Footnotes

Footnote 1:Defendant's Memorandum of Law, dated June 17, 2022, at page 30.